# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**OTIS WILLIAM O'QUIN**

**VERSUS**

**FINANCIAL SERVICES ONLINE, INC.**

**CIVIL ACTION**

**NO. 18-36-JWD-RLB**

## RULING AND ORDER

This matter comes before the Court on the *Motion to Dismiss for Lack of Personal Jurisdiction, Alternative Motion to Transfer Venue, and Alternative Motion for Abstention* (Doc. 26) filed by Defendant Financial Services Online, Inc. ("FSO" or "Defendant"). Plaintiff Otis O'Quin ("O'Quin" or "Plaintiff") opposes the motion. (Doc. 28.) Defendant has filed a reply memorandum. (Doc. 29.) Oral argument is not necessary. The Court has carefully considered the law, the record, and the arguments of the parties and is prepared to rule. For the following reasons, the Court will deny Defendant's motion to dismiss for lack of personal jurisdiction and Defendant's alternative motion for abstention. The Court will grant Defendant's alternative motion to transfer venue.

## I.    Relevant Factual Background

In essence, Plaintiff claims that FSO breached its employment contract with him and wrongfully terminated him. (Doc. 1-1 at 11; Doc. 26-1 at 1.)

FSO is a Texas corporation with its principal place of business in Katy, Texas. (Doc. 26-1 at 2.) With the exception of Plaintiff, FSO's officers were all located in Texas during Plaintiff's employment with FSO. (*Id.*) FSO services financial advisors through the Internet via the sale of membership access to its library of financial tools and materials. (*Id.*) FSO services are all online, and its computer servers are located in Austin, Texas; in addition, all of FSO employees

and contractors are currently located in Texas. (Doc. 26-1 at 3.) FSO is not authorized to do business in Louisiana, (Doc. 1 at 3; Doc. 26-1 at 3), and does not have a registered agent for service of process in Louisiana, (Doc. 26-1 at 3). Additionally, FSO claims it has no offices located in Louisiana, does not own any real property or significant assets in Louisiana, and does not maintain a bank account or conduct any advertising in Louisiana. (*Id.*) FSO's Louisiana customers total only approximately 1% of FSO's customers. (*Id.*)

O'Quin entered into an employment contract ("Employment Contract" or "Contract") with FSO on July 1, 2016. (Doc. 1-1 at 3.) According to the terms of the Contract, FSO agreed to guarantee employment to O'Quin for a minimum of five years, subject to renewals afterward. (Doc. 1-1 at 4.) Based on the Employment Contract, Plaintiff claims that he was a term employee of FSO, with the term of his employment running from July 1, 2016 through July 1, 2021. (*Id.*) Under the Employment Contract, O'Quin was to be the President of FSO, work about 30-hours a week over a five-day workweek, and perform duties specified in the Contract. (Doc. 1-1 at 4–5.) The Contract also included O'Quin's salary for performing his duties as President, which was $4,000 per month, the annual salary rate equivalent to the highest paid employee at FSO. (Doc. 1-1 at 5.) Additionally, the Employment Contract required O'Quin to perform his duties from his home office in East Baton Rouge Parish. (*See* Doc. 1-1 at 3; Doc. 1-1 at 31.)

In the summer of 2017, the majority owners of FSO, Jim O'Quin and Zach Kirkpatrick ("Kirkpatrick") allegedly began to institute various changes to FSO. (*Id.*) Plaintiff disagreed with and opposed these changes. (*Id.*) When it became clear that the parties could not come to an agreement on the operation of the company, the parties began to discuss buyout proposals. (Doc. 1-1 at 6.) However, Plaintiff, Jim O'Quin, and Kirkpatrick never reached an agreement on a buyout proposal. (*Id.*) Afterward, Jim O'Quin and Kirkpatrick met with Plaintiff to discuss the

new duties they expected him to take on as President of FSO. (*Id.*) Allegedly, these new duties far exceeded the scope of what Plaintiff agreed to do in his employment contract. (*Id.*) Plaintiff claims the purpose of these new duties was to attempt to force him to perform more work than he was capable of handling, in an effort to persuade him to quit. (*Id.*) Due to the Employment Contract, FSO was unable to terminate Plaintiff's employment "at will" because Plaintiff was employed under a fixed-term contract, which had not expired and FSO did not have serious grounds of complaint to terminate him for other reasons. (*Id.*)

One month prior to the alleged breach of contract, FSO issued a report outlining the tasks Plaintiff accomplished pursuant to his new duties. (Doc. 1-1 at 7.) FSO was purportedly satisfied with Plaintiff's performance and work at that time. (*Id.*) In July 2017, Plaintiff sent Jim O'Quin and Kirkpatrick an email specifying his concerns about the future of the company. (*Id.*) In his correspondence, Plaintiff expressed his intentions to no longer be involved in managing FSO with the title of President, given that the new duties were more than he could handle on a part-time basis, per the original Employment Contract. (*Id.*) Plaintiff purportedly offered to discuss with Jim O'Quin and Kirkpatrick his intent to resign as President of FSO, but continue under his Contract as an employee of FSO with a different title and duties they all could agree upon. (*Id.*) Plaintiff claims such changes were permitted under the Contract, which specified that Plaintiff's employment duties or title could be changed by agreement and with approval of the parties. (*Id.*)

Plaintiff alleges that in an effort to terminate him without having to pay him for the remaining months of his employment term under the Contract, Kirkpatrick and Jim O'Quin distorted Plaintiff's offer to resign as President as providing notice of Plaintiff's intent to terminate his employment with FSO entirely. (Doc. 1-1 at 8.) Plaintiff asserts that he never intended to resign completely from employment with FSO and that his email specifically

excluded that possibility. (*Id.*) After Plaintiff was aware that his email would be used to terminate his employment with FSO, he rescinded his offer to resign as President of FSO in an email sent to Jim O'Quin and Kirkpatrick on July 24, 2017. (*Id.*) Kirkpatrick responded by attempting to convince Plaintiff that he should accept Kirkpatrick and Jim O'Quin's buyout proposal, and Kirkpatrick noted that Plaintiff's resignation had already been accepted. (*Id.*) Kirkpatrick and Jim O'Quin allegedly offered Plaintiff another opportunity to buy out their FSO shares because the parties could not amicably work together. (*Id.*) Plaintiff claims that Jim O'Quin and Kirkpatrick "forced" Plaintiff to make a decision: either he could remain an employee under his current Employment Contract following the buyout or he would lose his employment with FSO if he failed to agree to their buyout terms. (Doc. 1-1 at 8–9.) Plaintiff attempted to negotiate with Jim O'Quin and Kirkpatrick to lower their selling price to no avail. (Doc. 1-1 at 9.) Purportedly, this allowed Jim O'Quin and Kirkpatrick to make the decision for Plaintiff because they knew he would be unable to meet their price. (*Id.*)

On August 7, 2017, Kirkpatrick sent a letter to Plaintiff providing that he was formally accepting Plaintiff's resignation from FSO, effective immediately, noting that FSO appreciated Plaintiff's offer to resign in lieu of the company terminating his employment. (*Id.*) Plaintiff claims this letter was nothing more than a termination letter. (Doc. 1-1 at 10.) Therefore, Plaintiff asserts that FSO breached its Contract to employ him for a minimum of five years when it terminated Plaintiff without any serious grounds for complaint. (Doc. 1-1 at 11.) As a result, FSO wrongfully terminated Plaintiff. (*Id.*) Plaintiff claims he is entitled to the remainder of his salary under the terms of the contract and reasonable attorney's fees pursuant to La. R.S. §§ 23:631–632. (*Id.*)

## II.    Discussion

### A.  Summary of Ruling

Defendant's motion raises three issues. First, Defendant argues that Plaintiff's case should be dismissed because Plaintiff cannot satisfy the *prima facie* burden of establishing that this Court has personal jurisdiction over FSO. Second, and in the alternative, Defendant urges this Court to transfer this case to the Southern District of Texas, Houston Division ("Southern District") under 28 U.S.C. § 1404(a) because it is a more convenient forum than the Middle District of Louisiana ("Middle District"). Third, and as a further alternative, Defendant requests that the Court stay the case pursuant to the *Colorado River* abstention doctrine. *See Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976).

In sum, the Court will deny Defendant's motion to dismiss for lack of personal jurisdiction. Plaintiff has met his *prima facie* burden of demonstrating that this Court could establish specific personal jurisdiction over Defendant. However, the Court will grant Defendant's alternate motion to transfer venue. Pursuant to § 1404(a) and Fifth Circuit jurisprudence, Defendant has shown that a transfer of venue to the Southern District is clearly more convenient. As a result, the Court need not reach the issue of whether to grant Defendant's alternative motion for abstention; this alternative motion is denied without prejudice.

### B.  Personal Jurisdiction

#### 1. Parties' Arguments

##### a.  Defendants' Motion (Doc. 26) and Supporting Memorandum (Doc. 26-1)

Defendant argues that Plaintiff's claims against FSO should be dismissed because FSO is not subject to personal jurisdiction in Louisiana. (Doc. 26-1 at 1.)

Defendant first contends that Plaintiff's case should be dismissed under Rule 12(b)(2) for lack of personal jurisdiction in Louisiana. (Doc. 26-1 at 5.) A federal court has jurisdiction over nonresident defendants if the forum state confers personal jurisdiction over that defendant by statute and if the exercise of jurisdiction is consistent with constitutional due process. (Doc. 26-1 at 5 (citing *Ruston Gas Turbines, Inc. v. Donaldson Co.*, 9 F.3d 415, 418 (5th Cir. 1993)).) Defendant argues that Louisiana's long-arm statute is coextensive with the limits of constitutional due process. (Doc. 26-1 at 5 (citing La. R.S. § 13:3201; *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 242–43 (5th Cir. 2008)).) Under the Fourteenth Amendment, due process requires that the nonresident defendant must have "minimum contacts" with the forum state and that subjecting the nonresident defendant to the court's jurisdiction comports with "traditional notions of fair play and substantial justice." (Doc. 26-1 at 5 (citing *Walk Haydel*, 517 F.3d at 243.)) Although the "minimum contacts" part of the analysis can give rise to "specific" or "general" personal jurisdiction, Defendant argues that Plaintiff can establish neither. (Doc. 26-1 at 6 (citing *Marathon Oil Co. v. A.G. Ruhrgas*, 182 F.3d 291, 295 (5th Cir. 1999)).)

As to "general" personal jurisdiction, Defendant asserts that FSO's principal place of business is in Texas, rather than Louisiana, (Doc. 24), FSO is not registered to do business in Louisiana, nor does it maintain any headquarters or offices in Louisiana, and does not have a registered agent for service of process in Louisiana. (Doc. 26-1 at 6.) Additionally, FSO does not have any officers, employees (now that Plaintiff is no longer an FSO employee), or contractors in Louisiana. (*Id.*) Defendant further contends that FSO did not advertise in Louisiana, does not have a bank account, or own any movable or immovable assets in the state. (Doc. 26-1 at 6 (citing O'Quin Decl. ¶s 3, 7; Kirkpatrick Decl. ¶s 15–16).) According to Defendant, these facts

negate the possibility of Louisiana courts exercising general jurisdiction over FSO. (Doc. 26-1 at 6–7 (citing *Johnston*, 523 F.3d at 609-13; *Romero v. North Trail RV Ctr.*, 2010 WL 3724337, *3–4 (W.D. La. Aug. 20, 2010)).)

Defendant also asserts that Plaintiff cannot establish "specific" jurisdiction over FSO in Louisiana. (Doc. 26-1 at 7.) The Fifth Circuit articulated a tripartite analysis for the "specific" jurisdiction inquiry: (1) The court determines "whether the defendant has minimum contacts with the forum state"; (2) The court considers "whether plaintiff's cause of action arises out of or results from the defendant's forum-related contacts"; and (3) if the plaintiff establishes the first two prongs, "the burden shifts to the defendant to defeat jurisdiction by showing that its exercise would be unfair or unreasonable." (Doc. 26-1 at 7 (citing *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006); *see also Nuovo Pignone, SpA v. STORMAN ASIA M/V*, 310 F.3d 374, 378 (5th Cir. 2002)).)

Defendant argues that Plaintiff's petition fails to allege anything tending to show that FSO "purposefully directed" its activities at Louisiana or "purposefully availed itself of the privileges of conducting activities" in Louisiana. (Doc. 26-1 at 7.) Although Plaintiff alleged that his Employment Contract was "executed" in Baton Rouge, Louisiana, (Doc. 1 at 3), Defendant contends that this is inaccurate because Joan Barrett ("Barrett"), FSO's Secretary, executed the contract in Texas, (Doc. 26-1 at 7). Defendant also claims that Kirkpatrick and Jason McEachern ("McEachern"), FSO's Chief Executive Officer ("CEO"), drafted the contract in Texas, but that Plaintiff later signed the contract in Louisiana. (Doc. 26-1 at 7.) Moreover, all face-to-face negotiations of the employment contract took place in Texas. (Doc. 26-1 at 7–8.) Defendant further asserts that the employment contract was not "performed" in Baton Rouge, Louisiana, because although Plaintiff worked from home in Louisiana, he was working with Texas

customers and potential customers. (Doc. 26-1 at 8.) Additionally, FSO performed its contractual obligations in Texas. (*Id.*) Finally, Defendant argues that the actions giving rise to Plaintiff's claims arose from alleged conduct by Defendant in Texas. (*Id.*) Therefore, because Plaintiff cannot demonstrate that this Court can establish general or specific jurisdiction over FSO in Louisiana, Defendant argues for the case's dismissal. (Doc. 26-1 at 9.)

### b. Plaintiff's Opposition (Doc. 28)

In sum, Plaintiff argues that he can establish general and specific jurisdiction over FSO in Louisiana. (Doc. 28 at 1.)

First, Plaintiff asserts that general jurisdiction over FSO in Louisiana is established through FSO's substantial, continuous, and systematic contacts with Louisiana. (Doc. 28 at 2.) Plaintiff, acting as President of FSO directed, controlled, and coordinated FSO's activities from his office in Baton Rouge for over 17 years. (Doc. 28 at 2.) Additionally, general jurisdiction should be found because of FSO's commercial activity over the Internet in Louisiana. (Doc. 28 at 2.) The Fifth Circuit's recently cited the standard in *Zippo Manufacturing Company v. Zippo Dot Com, Inc.*: "the exercise of jurisdiction is determined by the level of interactivity and commercial nature of the exchange of information that occurs on the Website." (Doc. 28 at 2 (citing *Greatfence.com, Inc. v. Bailey*, 726 F. App'x 260 (5th Cir. 2018) (per curiam) (citing *Mink v. AAAA Dev. LLC*, 190 F.3d 333, 336 (5th Cir. 1999) (quoting *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997)).) Thus, FSO is subject to general personal jurisdiction in Louisiana because FSO conducts business over the Internet by engaging in business transactions and entering into subscription contracts with Louisiana residents online. (Doc. 28 at 2.) FSO's website is highly interactive because it involves the knowing and repeated transmission of computer files over the Internet, satisfying the *Zippo* test. (Doc. 28 at 3.)

Second, Plaintiff argues that he can assert specific jurisdiction over FSO in Louisiana. (Doc. 28 at 3.) FSO purposefully directed its activities at Louisiana residents because FSO employed O'Quin in Louisiana, and because this case arises out of and relates to FSO's breach of its employment contract with O'Quin. (Doc. 28 at 3.) Additionally, FSO purposefully availed itself of the privileges of conducting activities in Louisiana when FSO "reached out" to Plaintiff by telephone and mail with the aim of entering a long-term contractual relationship with Plaintiff. (Doc. 28 at 3 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985)).) Plaintiff argues further that the lack of Defendant physically entering Louisiana does not preclude a finding that specific jurisdiction is established. (Doc. 28 at 3 (citing *Burger King*, 471 U.S. at 476; *Central Freight Lines, Inc. v. APA Transport Corp.*, 322 F.3d 376 (5th Cir. 2003)).)

### c. Defendant's Reply (Doc. 29)

With respect to general jurisdiction, Defendant notes that neither party disputes that FSO is incorporated and has its principal place of business in Texas. Defendant argues that the facts cited by Plaintiff do not show that FSO is "essentially at home" in Louisiana to be subject to general jurisdiction there. (Doc. 29 at 1 (citing *Daimler AG v. Bauman*, 134 S. Ct. 746, 761–62 (2014)).) Defendant argues that simply because Plaintiff communicated and met with potential customers residing in Louisiana, Plaintiff has not asserted that he met with customers *in* Louisiana. (Doc. 29 at 1–2.) Moreover, even if Plaintiff met with some customers in Louisiana, they comprise less than 1% of FSO's total customers, which is insufficient to confer general jurisdiction over FSO in Louisiana. (Doc. 29 at 2 (citing *Mercury Rents, Inc. v. Crenshaw Enterprises, LLC,* 2017 WL 2380642 (W.D. La. Apr. 13, 2017)).) Defendant also disputes Plaintiff's argument that general jurisdiction is present because FSO conducts a significant portion of its business over the Internet. (Doc. 29 at 2.) Defendant observes that the case Plaintiff

cites in support of this assertion concerned specific jurisdiction rather than general jurisdiction, and in that case, the Fifth Circuit found that substantial internet activity did not meet the requirements of specific jurisdiction. (Doc. 29 at 2 (citing *Greatfence.com*, 726 F. App'x 260).)

As for specific jurisdiction, Defendant disputes whether a contract is sufficient to establish minimum contacts in the opposing party's home forum. (Doc. 29 at 3 (citing *Burger King*, 471 U.S. at 479).) Instead, in contract cases, courts should consider factors such as "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." (Doc. 29 at 3 (citing *Burger King*, 471 U.S. at 479).) Defendant further argues that Plaintiff does not dispute that the face-to-face negotiations leading to the Employment Contract all took place in Texas, the Employment Contract was drafted in Texas, and FSO executed the Employment Contract in Texas. (Doc. 29 at 3.) Plaintiff also performed work in Louisiana and Texas pursuant to the contract. (Doc. 29 at 3.) Thus, the Employment Contract was always centered in Texas. (Doc. 29 at 3.) As a result, the circumstances indicate that FSO would not reasonably anticipate being haled into court in Louisiana (Doc. 29 at 3 (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).)

### 2. Rule 12(b)(2) Standard

#### a. Generally

When a nonresident defendant moves to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of establishing that the court has jurisdiction over the defendant. *Herman v. Cataphora, Inc.*, 730 F.3d 460, 464 (5th Cir. 2013). To withstand a Rule 12(b)(2) motion, a "plaintiff need only present a *prima facie* case of personal jurisdiction to satisfy its burden." *Id.*

"When a court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, it must accept as true the uncontroverted allegations in the complaint and resolve in favor of the plaintiff any factual conflicts." *Id.* A court determines the existence of personal jurisdiction over a nonresident defendant by examining the "(1) assertion of jurisdiction by the law of the forum," and "(2) conformity of the law with the Constitution." *Pedalahore v. Astropark, Inc.*, 745 F.2d 346, 347 (5th Cir. 1984). A defendant is amenable to the personal jurisdiction of a federal court sitting in diversity to the same extent that it would be amenable to the jurisdiction of a state court in the same forum. *Id.*

In a diversity action, a federal district court may exercise personal jurisdiction over a defendant to the extent permitted by the applicable state law. Fed. R. Civ. Proc. 4(e)(1); *Panda Brandywine v. Potomac*, 253 F.3d 865, 868 (5th Cir. 2001). Pursuant to La. Rev. Stat. § 13:3201, Louisiana's long-arm statute, courts are permitted to exercise personal jurisdiction over non-residents consistent with the Louisiana State Constitution and the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *A & L Energy, Inc. v. Pegasus Group*, 791 So.2d 1266, 1270 (La. 2001). A court's exercise of personal jurisdiction over a non-resident defendant comports with the due process clause when (1) the defendant has purposefully availed himself of the benefits and protections of the forum state by establishing minimum contacts with that state and (2) the court's exercise of jurisdiction over that defendant does not offend traditional notions of fair play and substantial justice. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

The Supreme Court has recognized two types of personal jurisdiction: "general" and "specific" jurisdiction. *Bristol-Myers-Squibb Co. v. Superior Court of Cal.*, 137 S. Ct. 1773, 1779 (2017) (citing *Goodyear Dunlop Tire Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011)). "Specific" jurisdiction, sometimes referred to as "case-linked" or "conduct-linked" jurisdiction,

requires an "affiliatio[n] between the forum and the underlying controversy." *Goodyear*, 131 S. Ct. at 2851. "[S]pecific jurisdiction is confined to adjudication of 'issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Id*. (citation omitted). By contrast, "general" or "all purpose" jurisdiction permits a court to assert jurisdiction over a defendant based on forum connections unrelated to the underlying suit. *Id*.

In deciding whether there is personal jurisdiction, the Court should first determine whether the connection between the forum and the circumstances giving rise to the suit can justify the exercise of specific jurisdiction. *Daimler*, 134 S. Ct. at 746, n.20.

### b. Specific Jurisdiction

The Fifth Circuit has articulated a three-step analysis for the specific jurisdiction inquiry. *Nuovo Pignone*, 310 F.3d at 378. First, the court must determine "whether the defendant has minimum contacts with the forum state." *Id*. Second, the court considers "whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts." *Id*. Third, "[i]f the plaintiff successfully satisfies the first two prongs, the burden shifts to the defendant to defeat jurisdiction by showing that its exercise would be unfair or unreasonable." *Seiferth*, 472 F.3d at 271.

A court may find specific jurisdiction when a nonresident defendant has "purposefully directed" his activities at residents of the forum. *Trois v. Apple Tree Auction*, 882 F.3d 485, 489 (5th Cir. 2018) (citing *Religious Tech. Ctr. v. Liebreich*, 339 F.3d 369, 373 (5th Cir. 2003) (citing *Burger King*, 471 U.S. at 462)). "In order for a court to exercise specific jurisdiction over a claim, there must be an 'affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State.'" *Bristol-Myers-Squibb*, 137 S. Ct. at 1780 (quoting *Goodyear*, 131 S. Ct. at 2846). The suit must "aris[e] out of or relat[e] to the

defendant's contacts with the *forum*." *Bristol-Myers-Squibb*, 137 S. Ct. at 1780 (quoting *Daimler*, 134 S. Ct. at 754). "For this reason, 'specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction.'" *Bristol-Myers-Squibb Co. v. Superior Court of Cal.*, 137 S. Ct. 1773, 1780 (2017) (quoting *Goodyear*, 131 S. Ct. at 2846). Thus, the primary focus of a personal jurisdiction inquiry is the defendant's relationship to the forum state. *Bristol-Myers-Squibb*, 137 S. Ct. at 1779 (citing *Walden v. Fiore*, 134 S. Ct. 1115, 1121–23 (2014)).

Because "specific personal jurisdiction is a claim-specific inquiry," *Trois*, 882 F.3d at 489 (quoting *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009)), "only those acts which relate to the formation of the contract and the subsequent breach are relevant," *Trois*, 882 F.3d at 489 (quoting *Religious Tech. Ctr.*, 339 F.3d at 375). This includes "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Trois*, 882 F.3d at 489 (citing *Burger King*, 471 U.S. at 479). However, a defendant's contract with an out-of-state party alone does not automatically establish sufficient minimum contracts in the other party's forum. *Gulf Coast Bank & Trust Co. v. Designed Conveyor Systems, L.L.C.*, 7171 F. App'x 394, 399 (5th Cir. 2017) (citing *Pervasive Software Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 222–23 (5th Cir. 2014) (quoting *Burger King*, 471 U.S. at 478)).

### c. General Jurisdiction

In *Daimler AG v. Bauman*, the Supreme Court provided clear guidance on the standard for "general" or "all purpose" jurisdiction. *See generally* 134 S. Ct. 746 (2014). In *Daimler*, Plaintiffs alleged that during Argentina's "Dirty War," which spanned from 1976-1983, Daimler's Argentinian subsidiary, Mercedes-Benz Argentina (MB Argentina) collaborated with state security forces to kidnap, detain, torture and kill certain MB Argentina workers, among them,

plaintiffs or persons closely related to plaintiffs. *Id*. at 751. The *Daimler* case concerned the authority of a court in the United States to entertain a claim brought by foreign plaintiffs against a foreign defendant based on events occurring entirely outside of the United States. *Id*. at 750.

The Court re-articulated the standard for general jurisdiction as follows: "A court may assert general jurisdiction over foreign corporations...to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum state." *Daimler*, 134 S. Ct. at 754 (quoting *Goodyear*, 131 S. Ct. at 2851).

Only a "limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there." *Daimler*, 134 S. Ct. at 760. That "limited set" of affiliations includes the corporation's place of incorporation and its principle place of business. *Id*.

*Daimler* made clear that it was *not* holding that "a corporation may be subject to general jurisdiction only where it is incorporated or has its principle place of business." *Id*. "We do not foreclose the possibility that in an exceptional case, a corporation's operations in a forum other than its formal place of incorporation or principle place of business may be so substantial and of such a nature as to render the corporation at home in that State." *Id*. at 746, n.20 (internal citation omitted).

In measuring whether the corporation's affiliations with the State are sufficient to impose general jurisdiction, the inquiry does not focus merely on the magnitude of the defendant's in-state contacts. "General jurisdiction instead calls for an appraisal of a corporation's activities in their entirety, nationwide and worldwide." *Id*.[1]

---

[1] Justice Sotomayor, while agreeing with the result, disagreed with this test that required a new and unfounded "proportionality requirement." *Id*., 134 S. Ct. at 770.

Measuring the contacts of Daimler and its American subsidiary and distributor,[2] the Court found that the defendants' affiliations were insufficient to justify general jurisdiction over them. Despite the fact that Daimler's American distributor was the largest supplier of luxury vehicles to the California market (accounting for 10% of Daimler's new vehicle sales in the U.S. and 2.4% of Daimler's worldwide sales), the Court found that this was not enough to justify California asserting general jurisdiction over them. *Id*. at 752.

### 3. Analysis

Here, Plaintiff alleges that this Court has both specific and general jurisdiction over FSO. (*See* Doc. 28.) The Court should first determine whether the connection between the forum and the circumstances giving rise to the suit can justify the exercise of specific jurisdiction. *See Daimler*, 134 S. Ct. at 746, n.20. Here, the Court agrees that the Employment Contract and Defendant's alleged contacts with Louisiana in relation to that contract satisfy Plaintiff's *prima facie* burden of establishing specific personal jurisdiction over Defendant. *See generally Herman*, 730 F.3d at 464. Because the Court agrees that Plaintiff has met his burden of establishing specific personal jurisdiction over FSO, the Court need not reach the question of whether Plaintiff established general jurisdiction over FSO, although the Court notes that FSO's operations are likely not, when measured by the standard set out in *Daimler*, sufficient for this Court to impose general jurisdiction over FSO. As a result, the Court will deny Defendant's 12(b)(2) motion to dismiss for lack of personal jurisdiction.

Plaintiff's argument that this Court has specific jurisdiction over FSO mainly rests on his assertion that through FSO's Employment Contract with him, Defendant met the requirements of

---

[2]While the majority does not state explicitly that it was proper for the Court to measure a parent's contacts with the forum state by utilizing the contacts of its distributor/subsidiary, the Court seems to assume that this is proper. See Justice Sotomayor's concurring opinion, *Daimler*, 134 S. Ct. at 769.

establishing "minimum contacts" with the forum. *Int'l Shoe*, 326 U.S. at 316 (1945). While Plaintiff alleges other activities that FSO conducted in Louisiana, such as FSO conducting business and advertising to customers in Louisiana, these allegations would not support an assertion of specific jurisdiction over Defendant. (*See* Doc. 28 at 1.) Instead, the only actions that can support specific jurisdiction over FSO are those relating to the Employment Contract, on which this action is based. *See Burger King*, 471 U.S. at 479; *Trois*, 882 F.3d at 489.

In the Employment Contract, FSO and Plaintiff agreed that Plaintiff would perform work from his home office in Baton Rouge, Louisiana. (*See* Doc. 1 at 31.) Moreover, Plaintiff did perform his portion of the contract in Louisiana, and serviced Louisiana clients and potential customers in Louisiana. (*See* Doc. 28 at 1.) Pursuant to the Contract, Plaintiff claims he performed all of his work duties in Louisiana. (*See* Doc. 28 at 1; Doc. 28-2 at 2.) Defendant does not apparently dispute that Plaintiff performed work in Louisiana. (*See* Doc. 29 at 3.) Plaintiff additionally contends that, as President of FSO, he directed, controlled, and coordinated the activities of FSO from his home office in Baton Rouge for over 17 years. (Doc. 28-2 at 2.) Furthermore, Plaintiff asserts that Defendant reached out to him via telephone and mail with the aim of entering into the Contract when Plaintiff resided in Louisiana. (Doc. 28-1 at 3; Doc. 28-2 at 3.) Moreover, Plaintiff alleges that the Contract was executed in East Baton Rouge Parish in Louisiana. (Doc. 1 at 3.) Plaintiff implies that the Employment Contract was confected in both Louisiana and Texas through the parties' negotiations. (*See* Doc. 28-2 at 3.) By contrast, Defendant contends that *all* of the face-to-face negotiations occurred in Texas. (*See* Doc. 29 at 3.) Defendant also claims the Contract was drafted and executed in Texas. (Doc. 29 at 3.)

Plaintiff indicates that the exercise of personal jurisdiction is related to Defendant's actions touching the forum, actions which are sufficiently related to the dispute in this case. Plaintiff has

produced evidence indicating that the Employment Contract was performed in Louisiana, that the Contract was executed in Louisiana, and that at least some of the negotiations of the Contract occurred in Louisiana. While Defendant contests some of this evidence and supplies evidence of its own to controvert Plaintiff's allegations, this Court is bound to resolve the factual dispute in favor of Plaintiff because this Court rules on Defendant's motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing. *See generally Herman*, 730 F.3d at 464. As a result, the Court must accept as true the uncontroverted allegations in Plaintiff's complaint and resolve in favor of Plaintiff any factual conflicts. *See generally id.* Moreover, because the Employment Contract specifically provides that Plaintiff perform his work in Louisiana, this Court agrees that Defendant did reach out to the forum state and did purposefully direct activities at the forum. *See generally Trois*, 882 F.3d at 489. Defendant, therefore, did have "minimum contacts" with Louisiana, and the cause of action arose from Defendant's forum-related contacts. *Nuovo Pignone*, 310 F.3d at 378.

The Court concludes that Plaintiff has met his *prima facie* burden of demonstrating personal jurisdiction over Defendant. *See generally Herman*, 730 F.3d at 464. While the Employment Contract, standing alone, is insufficient to establish specific personal jurisdiction over FSO, Plaintiff's allegations satisfy the other factors leading to or following the contract, which here provide additional contacts sufficient to subject Defendant to jurisdiction in Louisiana. *See generally Burger King*, 471 U.S. at 478.

Once the plaintiff satisfies the first two prongs of the specific jurisdiction analysis, the burden shifts to the defendant, who must show that the exercise of personal jurisdiction would be unfair or unreasonable. *See Nuovo Pignone*, 310 F.3d at 378. Here, FSO declined to address whether the exercise of jurisdiction over it would be unfair or unreasonable. (*See* Doc. 26-1 at 9.)

Thus, the Court finds that, while Plaintiff has met his burden, FSO has failed to meet its burden of rebutting Plaintiff's claims.

Therefore, the Court denies Defendant's 12(b)(2) motion.

### C. Transfer of Venue

#### 1. Parties' Arguments

##### a. Defendants' Motion (Doc. 26) and Supporting Memorandum (Doc. 26-1)

In the alternative, Defendant argues that if this Court determines it has personal jurisdiction over FSO, the Court should transfer the case to the Southern District of Texas pursuant to 28 U.S.C. § 1404(a) and related Fifth Circuit jurisprudence. (Doc. 26-1 at 9.)

Section 1404(a) states: "[f]or the convenience of parties and witnesses [and] in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." (Doc. 26-1 at 9 (citing 28 U.S.C. § 1404(a)).) Defendant bears the burden of proving that the transfer of venue is warranted, and therefore, must show good cause for the transfer. (Doc. 26-1 at 9 (citing *In re Volkswagen of Am., Inc. (Volkswagen II)*, 545 F.3d 304, 315 (5th Cir. 2008)).) Defendant must show: (1) the action could have been brought in the suggested venue; (2) the transfer is for the convenience of the parties and witnesses; and (3) the transfer is in the interest of justice. (Doc. 26-1 at 9 (citing *Volkswagen II*, 545 F.3d at 315).) If a defendant demonstrates that the new venue is clearly more convenient, then the defendant has shown good cause and district courts should grant the transfer. (Doc. 26-1 at 9 (citing *Volkswagen II*, 545 F.3d at 315).)

The private interest factors for determining whether a 1404(a) venue transfer is for the convenience of parties and witnesses and in the interest of justice are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. (Doc. 26-1 at 9–10 (citing *Volkswagen II*, 545 F.3d at 315).) The public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflicts of laws or in the application of foreign law. (Doc. 26-1 at 10 (citing *Volkswagen II*, 545 F.3d at 315).) Defendant argues that the first, second, third, fourth, and private interest factors as well as the first, second, and third public interest factors weigh in favor of FSO. (Doc. 26-1 at 10–16.) Defendant notes that the fourth public interest factor is inapplicable to this case because it does not raise a conflicts of law or foreign law issues. (Doc. 26-1 at 16.)

### b. Plaintiff's Opposition (Doc. 28)

In short, Plaintiff contends that the public and private interest factors do not support a 1404(a) transfer. (Doc. 28 at 3–4.) As for the private interest factors, Plaintiff argues that the first factor is not dispositive for either party, the second factor supports a transfer to the Southern District, and the third and fourth factors weigh against transferring venue to Southern District. (Doc. 28 at 4–6.) The public interest factors also weigh in favor of Plaintiff. (Doc. 28 at 6–8.) Plaintiff asserts that all of the public interest factors weigh against a transfer to the Southern District. (Doc. 28 at 7–8.) Plaintiff contends that this case does raise conflicts of law issues because Louisiana Revised Statutes § 23:921(A)(2) applies to the Employment Contract at

issue and invalidates the choice of law provision contained in the contract. (Doc. 28 at 7–8 (citing *Waguespack v. Medtronic, Inc.*, 185 F. Supp. 3d 916 (M.D. La. May 6, 2016) (citing *Sawicki v. K/S Stavanger Prince*, 802 So.2d 598, 606 (La.2001)).) Choice of law considerations, therefore, would be a consideration in this case. (Doc. 28 at 8.)

### c. Defendant's Reply (Doc. 29)

Defendant responds by arguing that Plaintiff's memorandum acknowledges that the second private interest factor weighs in favor of transferring venue to the Southern District. Defendant disputes Plaintiff's claims that the cost of attendance would not inconvenience willing witnesses. (Doc. 29 at 4.) Moreover, Defendant argues that the majority of witnesses would clearly be inconvenienced by appearing in the Middle District, in spite of Plaintiff's argument to the contrary. (*Id.*) Defendant also maintains that Plaintiffs argument that the fourth public interest factor is dispositive in favor of Plaintiff is erroneous because Texas law governs the Employment Contract according to the contract's own terms. (*Id.*) Louisiana Revised Statutes § 23:921(A)(2) only applies to employment contracts containing covenants not to compete that include a choice of laws provision, and is inapplicable to the Employment Contract in this case. (*Id.*)

### 2. 1404(a) Transfer Standard

### a. Section 1404(a)

Intended to do more than codify existing law on forum *non conveniens*, *Norwood v. Kirkpatrick*, 349 U.S. 29, 30, 75 S. Ct. 544, 545, 99 L. Ed. 789, 792 (1955), § 1404(a) allows a defendant to transfer an action to a generally more convenient forum, 28 U.S.C. § 1404(a); *Excelsior Designs, Inc. v. Sheres*, 291 F. Supp. 2d 181, 184 (E.D.N.Y. 2003). It reads: "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer

any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). To meet this statutory burden, the movant must establish that: (1) venue is proper in the transferor district; (2) venue is proper in the transferee district; and (3) the transfer will serve the convenience of the parties, the convenience of witnesses, and the interests of justice. *See e.g.*, *Volkswagen II*, 545 F.3d at 312; *In re Volkswagen AG (Volkswagen I)*, 371 F.3d 201, 203 (5th Cir. 2004); *Broadnax v. ABF Freight Sys.*, 169 F.R.D. 628, 629 (N.D. Ill. 1996).

### b. Section 1391(b)(1)

Statutorily, therefore, there always "exists a threshold inquiry [under § 1404] of whether the suit could have originally been brought in the venue where the action is sought to be transferred." *U.S. United Ocean Services, LLC v. Powerhouse Diesel Servs., Inc.* 832 F. Supp. 2d 717, 722 (E.D. La. 2013); *see e.g.*, *In re Horseshoe Entm't*, 337 F.3d 429, 434–35 (5th Cir. 2003). In other words, even before considering convenience and justice, *Excelsior Designs, Inc.*, 291 F. Supp. 2d at 185, a court must ensure that the district proposed could exercise personal jurisdiction over the parties and subject matter jurisdiction over the suit. *See, e.g.*, *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 431, 127 S. Ct. 1184, 1191–92, 167 L. Ed. 2d 15 (2007); *Parish of Plaquemines v. Total Petrochemical & Refining USA,* Inc., 64 F. Supp. 3d 872, 880 (E.D. La. 2014). Otherwise, no transfer can be ordered. *See, e.g.*, *Schertenleib v. Traum*, 589 F.2d 1156, 1161 (2d Cir. 1978); *Invivo Research, Inc. v. Magnetic Resonance Equip.*, 119 F. Supp. 2d 433, 436 (S.D.N.Y. 2000). As the movant, FSO bears the burden of satisfying the inquiry that the action may have originally been filed in the Southern District. *See, e.g.*, *Black & Decker Corp. v. Vermont Am. Corp.*, 915 F. Supp. 933, 937 (N.D. Ill. 1995); *Crossroads State Bank v. Savage*, 436 F. Supp. 743, 744 (W.D. Okla. 1977).

Section 1391(b)(1) provides: "A civil action may be brought in . . . a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located [.]" 28 U.S.C. § 1391(b)(1). The Fifth Circuit's leading case on this issue establishes that § 1391 controls a plaintiff's choice of venue "when no special, restrictive statute applies." *Volkswagen II*, 545 F.3d at 312. "Thus, while a plaintiff has the privilege of filing his claims in any judicial division appropriate under the general statute, §1404(a) tempers the effects of the exercise of this privilege." *Id* at 313.[1]

### c. Jurisprudential Construction of § 1404's Standard

Mined from § 1404's plain text, the Fifth Circuit employs a two-part test—justice and convenience—to determine whether a transfer of venue is warranted.[2] *Volkswagen II*, 545 F.3d at 314. Crucial to this analysis is the apparent purpose animating §1404(a): To "prevent plaintiffs from abusing their privilege under §1391 by subjecting defendants to venues that are inconvenient under their terms." *Id* at 313. As the Court explained, "Congress, by the term 'for the convenience of the parties and witnesses, in the interest of justice,' intended to permit courts to grant transfers upon a lesser showing of inconvenience." *Norwood*, 349 U.S. at 32. With modern precedent having relaxed the standard for a venue's transfer, courts continue to weigh the public and private interest factors ("*Gilbert* Factors") originally set forth in *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 67 S. Ct. 839, 91 L. Ed. 1055 (1947).[3] *Advance Prods. & Sys. Inc. v. CCI*

---

[1] This Court sees no conflict between § 1404(a) and § 1391(b)(2) and relied upon the latter in a motion based upon the former. *Norman v. H&E Equip. Servs.*, No. 3:14-CV-367, 2015 U.S. Dist. LEXIS 34928, at *13–14, 2015 WL 1281989, at *5 (M.D. La. Mar. 20, 2015).

[2] As a matter of law, in order to support a claim for transfer, the moving party must show that the statutory requirements are satisfied **and** clearly demonstrate that a transfer is for the convenience of the parties and witnesses and in the interest of justice.

[3] Nevertheless, the oft-cited general rule remains potent: "[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Gulf Oil Corp.*, 330 U.S. at 508; *accord, e.g.*, *Neelan v. Bharti*, 596 F. App'x 532, 533 (9th Cir. 2014).

*Piping Sys., LLC*, No. 2:14-CV-02456, 2015 U.S. Dist. LEXIS 26583, at *3, 2015 WL 920673, at *1–2 (W.D. La. Mar. 3, 2015) (summarizing the jurisprudence); *see also, e.g.*, *In re Radmax, Ltd.*, 720 F.3d 285, 288 (5th Cir. 2013) (citing *Volkswagen II*, 545 F.3d at 315).

Generally, the factors total eight: (1) "the relative ease of access to sources of proof"; (2) "the availability of compulsory process to secure the attendance of witnesses"; (3) "the cost of attendance for willing witnesses"; (4) "all other practical problems that make trial of a case easy, expeditious and inexpensive"; (5) "the administrative difficulties flowing from court congestion"; (6) "the local interest in having localized interests decided at home"; (7) "the familiarity of the forum with the law that will govern the case"; and (8) "the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law."[4] *Volkswagen II*, 545 F.3d at 315. "These factors are not exhaustive or exclusive, and no single factor is dispositive." *Oxysure Sys., Inc. v. Castaldo*, No. 4:15-cv-00324, 2016 U.S. Dist. LEXIS 32905, at *5, 2016 WL 1031172, at *2 (E.D. Tex. Mar. 15, 2016); *accord Action Indus., Inc. v. U.S. Fidelity & Guar. Co.*, 258 F.3d 326, 337, 340 (5th Cir. 2004).

### 3. Analysis

As a threshold matter, the Court concludes that the Southern District was a venue where the action could have been brought. Moreover, the Court finds that a transfer of venue is appropriate in this case.

The preliminary question under § 1404(a) is whether a civil action "might have been brought" in the destination venue. *Volkswagen II*, 545 F.3d at 312. FSO seeks to transfer this case to the Southern District. (Doc. 26 at 2.)

---

[4] For example, the seventh and eighth have no relevance to an intrastate transfer to an equally knowledgeable district court, like that proposed by Defendant.

Under 28 U.S.C. § 1391(b)(1), a civil action may be brought in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." Here, FSO, a Texas corporation with its principal place of business in Texas, is deemed to reside in any judicial district in which it is subject to personal jurisdiction. *See* 28 U.S.C. § 1391(c)(2). A business is "deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State." 28 U.S.C. § 1391(d). The Court finds that there is general jurisdiction over FSO in the Southern District because FSO's principal place of business is in Katy, Texas, located within the Southern District. In the present case, the facts as discussed above show that Defendant is a resident of the Southern District. Therefore, venue is proper in that district pursuant to 28 U.S.C.A. § 1391(b)(1).

### a. Private Interest Factors

#### i. Relative Ease of Access to Proof

When examining this factor, *Volkswagen* rejected the notion that document copying and storage technology rendered the factor of relative ease of access to proof unimportant. *Volkswagen II*, 545 F.3d at 316. The Court noted that the documents and physical evidence relating to the accident were located in Dallas, as was the accident site itself, and held that this factor favored transfer. *Id.*

In the present case, most of the physical evidence–the Employment Contract and related documents–is located in both venues because both Plaintiff and Defendant were involved in their creation and retained copies. (*See* Doc. 28 at 4.) Although Defendant notes that FSO's physical documentary records are maintained at its headquarters in Katy, Texas, most of these records are also stored electronically and can be accessed from FSO's physical office locations. (*See* Doc. 26-1 at 11.) Defendant contends that the documents are more easily accessed from its physical offices,

which are all in Texas, yet Defendant has not shown that the documents could not be easily transported to the Middle District. (*See generally* Doc. 26-1; Doc. 28 at 4.) In contrast, none of the witnesses with relevant knowledge of Plaintiff's claims (other than Plaintiff) are located in Louisiana; instead, the overwhelmingly majority, if not all, of the potential witnesses are located in Texas. (Doc. 26-1 at 11.) On balance, this factor supports transfer.

### ii. Availability of Compulsory Process to Secure the Attendance of Witnesses

In *Volkswagen*, the court stated that non-party witnesses located where the accident occurred would be outside the chosen venue's subpoena power for depositions, and any trial subpoenas requiring witnesses to travel more than 100 miles would be subject to being quashed under Rule 45 of the Federal Rules of Civil Procedure. *Volkswagen II*, 545 F.3d at 316. *Volkswagen* also considered the fact that a proper venue existed where subpoena power could be exercised. *Id.* at 316.

In the present case, both Plaintiff and Defendant agree that this factor favors transfer because none of FSO's anticipated witnesses are within the compulsory range of the Middle District pursuant to Federal Rule of Civil Procedure 45. (*See* Doc. 26-1 at 11–12; Doc. 28 at 4; Doc. 29 at 3–4.) A proper venue in which subpoena power can be exercised exists in the Southern District. *See* Fed. R. Civ. Pro. 45(c)(1). This factor clearly favors transfer to that district.

### iii. Cost of Attendance for Willing Witnesses

In *Volkswagen*, the Court referenced the "100-mile threshold" under which the court considers the inconvenience to witnesses to increase in direct relationship to additional distance when the venue chosen by the plaintiff and the proposed venue under § 1404(a) are more than 100 miles apart. *Volkswagen II*, 545 F.3d at 317. The Fifth Circuit stated that it is "an obvious

conclusion that it is more convenient for witnesses to testify at home," and that "[w]itnesses not only suffer monetary costs, but also the personal costs associated with being away from work, family, and community." *Id*.

In this case, Plaintiff is a resident and citizen of Louisiana, but his former co-workers who were witnesses to the Contract are all located in Texas. (*See* Doc. 26-1 at 12.) FSO anticipates that Kirkpatrick, Jim O'Quin, and Barrett will be key fact witnesses that FSO will call to testify at trial. Kirkpatrick is located in Kay Texas; Jim O'Quin is located in Austin, Texas; and Barrett is located in Richmond, Texas. (Doc. 26-1 at 13.) All of these witnesses are located in Texas, and both Kirkpatrick and Barrett are located within the Southern District. (*Id*.) Requiring these Houston-based witnesses to appear in court in Baton Rouge, Louisiana, which is approximately 270 miles from Houston, Texas, would cause them to suffer monetary costs as well as the personal costs associated with being away from work, family, and community. (*Id*.) This factor favors transfer to the Southern District.

### iv.   Practical Problems that Make Trial of a Case Easy, Expeditious, and Inexpensive

The final private interest factor to be considered is practical problems that make trial of a case easy, expeditious, and inexpensive. *Volkswagen II*, 545 F.3d at 315. There is no reason to believe that the trial of this matter would be easier, more expeditious, and less expensive when tried in Baton Rouge, Louisiana, than it would be when tried in Houston, Texas, which is closer to the location where many of the events occurred and the witnesses who are most likely to testify. This factor weighs in favor of transferring this case to the Southern District.

### b. Public Interest Factors

The Court now turns to the public interest factors to be considered in determining whether a transfer of venue is appropriate in this case: (1) the administrative difficulties flowing from court congestion, (2) the local interest in having localized interest decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *Id*.

#### i.  Administrative Difficulties Flowing from Court Congestion

This factor favors a district that can bring a case to trial faster. *See In re Genentech, Inc.*, 566 F.3d 1338, 1347 (5th Cir. 2009). Defendant does not argue that this factor favors transfer of venue and states that statistics from the Federal Judicial Caseload Statistics website indicate that a case might proceed more quickly to trial or other disposition in the Middle District. (Doc. 26-1 at 14; *see also* Doc. 26-4 at 2.) Contrary to Defendant's assertion, the Court observes that these statistics indicate that a case *would proceed* more quickly to trial or other disposition in the Southern District.[5] Thus, the Court finds that this factor weighs in favor of transfer.

#### ii.  Local Interest in Having Localized Interests Decided at Home

This factor inquires as to whether the residents of the venue chosen by the plaintiff "have an interest – that is, a stake – in the resolution of his controversy." *Volkswagen II*, 545 F.3d at 318. In *Volkswagen*, the Court held, "they do not, as they are not in any relevant way connected to the events that gave rise to this suit. In contrast, the residents of the Dallas Division have extensive connections with the events that gave rise to this suit." *Id*.

---

[5] Although Defendant submitted the 2017 Federal Judicial Caseload Statistics to the Court, the Court notes that the 2018 Federal Judicial Caseload Statistics support the same conclusion.

Similarly, the events that give rise to this suit have little relevant connection to the Middle District of Louisiana, aside from Plaintiff's residence in Louisiana. There are no particularly strong local interests in the Middle District, and the Middle District's residents have little interest or stake in having this case decided here. This case concerns a claim about a breach of a Texas Employment Contract based on the alleged actions of Kirkpatrick and Jim O'Quin in Texas. As the events giving rise to this suit mainly occurred in the Southern District, its residents have an interest and stake in the resolution of this case. This factor favors transfer to the Southern District.

      iii.    **Familiarity with Governing Law, and**

      iv.    **Avoidance of Problems with Conflict of Laws or Application of Foreign Law**

To determine which state's substantive law applies to such issues as liability and causation relating to Plaintiff's claims against FSO, this Court would apply Louisiana's conflicts of law statutes. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Louisiana law allows parties to contractually agree to which state's laws are to govern in the event of a dispute. *See* La. Civ. Code art. 3540; *NCH Corp. v. Broyles*, 749 F.2d 247, 250 (5th Cir.1985). However, such choice of law provisions do not govern the dispute when the provisions contravene the public policy of the state's laws that would otherwise be applicable. *See id.* Louisiana has a strong public policy against choice of law clauses in employment contracts. La. R.S. § 23:921(A)(2); *see also Waguespack v. Medtronic, Inc.*, 185 F. Supp. 3d 916 (M.D. La. May 6, 2016) (citing *Sawicki v. K/S Stavanger Prince*, 802 So.2d 598, 606 (La. 2001)). Moreover, Plaintiff has not ratified the choice of law clause after his termination from FSO, as required under La. R.S. § 23:921(A)(2). Thus, it is likely that the choice of laws provision in the Employment Contract is invalid under Louisiana substantive law. Louisiana's general conflicts

of law provisions would govern instead. *See* La. Civ. Code art. 3537. The Middle District likely handles issues of Louisiana contract and employment law more frequently, and is generally more familiar with the nuances of Louisiana's conflicts of law provisions.

Thus, this case does raise conflicts of law issues. Both parties dispute whether Louisiana or Texas law would apply to the facts of this case. As a result, both of these factors weigh against transfer to the Southern District.

As six of the eight factors weigh in favor of transferring this matter to the Southern District, the Court finds that the totality of the factors clearly favor transfer. Therefore, the Court grants Defendant's alternative motion for a § 1404(a) transfer to the Southern District.

### D.    Abstention

Finally, and in the alternative, Defendant urges this Court to stay this suit pursuant to the *Colorado River* abstention doctrine. (Doc, 26-1 at 16.) Plaintiff, however, contends that the *Colorado River* abstention doctrine is inapplicable to this case. (Doc. 28 at 8.)

The Court previously concluded that it will grant Defendant's *Alternative Motion to Transfer Venue* (Doc. 26). As a result, it is unnecessary for the Court to reach the question of whether it should abstain from the case. Defendant's alternative motion for abstention is therefore denied without prejudice

### III.    Conclusion

Accordingly,

**IT IS ORDERED** that Defendant's *Motion to Dismiss* (Doc. 26) is **DENIED.**

**IT IS FURTHER ORDERED** that Defendant's *Alternative Motion to Transfer Venue* (Doc. 26) is **GRANTED.**

**IT IS FURTHER ORDERED** that Defendant's *Alternative Motion for Abstention* (Doc. 26) is **DENIED WITHOUT PREJUDICE.**

**IT IS FURTHER ORDERED** that this case be transferred to the Southern District of Texas, Houston Division.

Signed in Baton Rouge, Louisiana, on October 26, 2018.

_____

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**